Vincent A. **MARCHESE**

v.

The **UNITED STATES.**

No. **301–70.**

United States Court of Claims.

Jan. 21, 1972.

Vincent A. Marchese, pro se.

Michael B. Rosenberg, Dept. of Justice, Civ.Div., Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARA-MORE, Judge, DURFEE, Senior Judge, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DE-FENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

Vincent A. Marchese is a former prisoner of the State of California who, *pro se*, seeks from us witness fees under 28 U.S.C. 1821,[1] together with compensation for services rendered while in the custody of federal authorities in New York on temporary transfer from state control on the West Coast for federal

1. "§ 1821. Per diem and mileage generally: subsistence

"A witness attending in any court of the United States. or before a United States commissioner, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall receive $20 for each day's attendance and for the time necessarily occupied in going to and re-

purposes on the East.[2] Although not a member of the Bar, he has acquitted himself, both in written and oral argument, at least as well as many a trained attorney. But, as will appear, we cannot give him the relief he asks.

Pursuant to a federal writ of habeas corpus ad testificandum, Mr. Marchese was removed from his California prison to Federal Detention Headquarters in New York City. His presence was required there as a witness in a prospective prosecution of another, from October 30, 1968, to December 31, 1968, when he was returned to California's custody following a plea of guilty by the accused which, of course, aborted trial. He was granted no witness fees. On April 21, 1969, he was again brought from the state prison to Federal Detention Headquarters, this time, under a writ of habeas corpus ad prosequendum, for arraignment on his own federal indictment involving theft from an interstate shipment. Plaintiff was detained in the federal facility until November 8, 1969, when he was returned to California because the Government had not yet set a date for trial.[3]

During both periods of interim custody in Federal Detention Headquarters in New York, Mr. Marchese was assigned work in the prison kitchen, to cook, wash dishes, and perform other such chores. He did this in a highly satisfactory manner, eleven hours a day, seven days a week. The local director of food services recommended that he be monetarily compensated as if a federal pris-

oner, a remuneration of only $55, but at that time the administrative ruling was that state prisoners, temporarily in federal hands, were not to be so paid. Following suit in this court (begun on August 28, 1970), the Bureau of Prisons reversed its position and sent him a check for $55 for the meritorious pay previously denied. He returned the check, and continues to refuse to accept that pittance.

■ I. *Witness fees:* Plaintiff does not argue that he is entitled to a subsistence allowance under 28 U.S.C. § 1821 (note 1, *supra*), and the statute in terms precludes that kind of award for a witness in custody. Nor does he ask for mileage which, of course, he did not pay. But he does contend that, as any private citizen, he suffered personal expenses while waiting upon federal court in New York, as a potential witness, during the fall of 1968, and therefore he asks for the $20 daily allowance. He cites in particular the need for civilian clothing during his cross-country flights, and for an attorney's retainer. Distinguishing Meadows v. United States Marshal, 434 F.2d 1007 (C.A. 5, 1970), cert. denied, 401 U.S. 1014, 91 S.Ct. 1265, 28 L.Ed.2d 551 (1971), which denied such per diem compensation to federal prisoner-witnesses who lost wages on their regular jobs in prison industries while waiting to testify, the plaintiff points out that there the Federal Government apparently assumed all the outside costs actually incurred. Following the logic of *Meadows,*[4] the defendant naturally an-

turning from the same, and 10 cents per mile for going and returning to his place of residence. Regardless of the mode of travel employed by the witness, computation of mileage under this section shall be made on the basis of a uniform table of distances adopted by the Attorney General. Witnesses who are not salaried employees of the Government and who are not in custody and who attend at points so far removed from their respective residences as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence including the time necessarily occupied in going to and returning from the place of attendance."

2. Plaintiff originally sought punitive damages as well but, recognizing that such a claim would sound in tort and be outside our jurisdiction, he abandoned it at oral argument.

3. He was shuttled East once again on September 4, 1970, for trial. He was acquitted and then sent back to continue serving his California sentence (and has since been released from confinement). No claim is made here with respect to this later period.

4. "Such prisoners are in the custody of the Attorney General, and they are not in a position similar to ordinary witnesses who

swers that any prisoner's time and services are not his own, unlike the private citizen, and that the daily rate is solely for those who are free to do other things.

When Congress decided on a $20 per diem, as the legislative history indicates, it did not expect that figure to completely reimburse every witness. Rather, twenty dollars was chosen as a flat sum, a compromise amount which might be a boon to the unemployed and a drop in the bucket for a prosperous doctor who would have to cancel his appointments with patients. It was anticipated that inequities could result in an individual case, but a variable scale of witness fees was thought to be administratively unfeasible. These considerations suggest that Congress was thinking only of the class which would normally be in a position to incur costs or suffer losses—those not in custody. Consistently with this rationale, the accounting officers of the Government have long ruled that neither federal prisoners (6 Comp.Dec. 588 (1900)) nor state inmates temporarily in federal custody (18 Comp.Gen. 609 (1939); 18 Comp.Gen. 765 (1939)) can collect the per diem. In the light of *Meadows* and the legislative purpose, we have no reason to upset this established administrative practice. Certainly there is no difference, in any respect pertinent to this claim, between federal prisoners and state convicts temporarily in federal custody.

■ Whether the plaintiff might have had a case for whole or partial recovery of the $20 per diem allowance if he had been forced to buy his own clothing we need not decide. When asked at oral argument as to the amount of expenses actually incurred, Mr. Marchese properly and candidly revealed that the Government did not compel him to wear civilian garb, and also that a friend sup-

plied him with what he considered suitable apparel. He does not assert that he himself incurred any out-of-pocket costs. As to the retainer paid the attorney, that surely is a special expense peculiar to the plaintiff's situation, and not the sort of outlay which Congress intended to cover under 28 U.S.C. § 1821.

■ II. *Compensation for work while in federal custody:* It is plaintiff's position that either there was authority for federal officials to compel him, a state prisoner, to perform labor, in which case he is not even entitled to $55—or there was no such authority, in which event he should have the wages of a non-prisoner private citizen. Because he erroneously assumes that the federal authorities violated the Thirteenth Amendment in assigning him to the prison kitchen, he fails to accept the third alternative, that he is entitled to the $55 payable to federal prisoners, and no more. As the Government correctly says, involuntary servitude is the essence of incarceration and the Thirteenth Amendment by its very language excepts the convicted prisoner from its reach.[5] Federal Detention Headquarters in New York had the right to detain plaintiff, a convicted prisoner, and therefore his status was totally different from that of an unconvicted citizen who is protected by the Amendment and legally free to offer his services as he will. We do not have to consider whether the Federal Government could have forced plaintiff to work if California had objected or if he had been willing to spend his time in New York idly in cramped confinement. There is no intimation that, the state authorities took such a position, and plaintiff admits that he had rejected the unpleasant option of being locked in a cell all day.[6] Even if we assume—which we by no means hold—that Detention Headquar-

---

must incur private costs in order to testify." 434 F.2d at 1008.

5. "1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been

duly convicted, shall exist within the United States, or in any place subject to its jurisdiction."

6. He also agrees that he was never mistreated while in New York.

ters should have refrained from offering him the chance to avoid close confinement by working, plaintiff would not be entitled to the normal wages of a citizen "outside", since he was properly in jail and could not have earned that kind of pay. His was still the limited world of the prison, and any compensation which he could demand would be measured by the standards of that special universe.

The defendant insists that the allotment of $55 (now proffered as a matter of grace) was a privilege and not a right and, as such, could be lawfully withheld even though his supervisor found the plaintiff entitled to it, and the Bureau of Prisons now treats state prisoners on an equal footing with federal inmates in this regard. This, too, is a point we need not reach. Mr. Marchese has made it clear that he does not wish to recover this meagre allowance even if he is entitled to it by law. His stance is that he will take nothing if he cannot have the full wages of the normal marketplace.

As the case is presented to us, plaintiff is not entitled to recover. His motion for summary judgment is denied, the defendant's is granted, and the petition is dismissed.